**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**JUDY ALDAY,**

     **Plaintiff,**

**vs.**                                **Case No.  5:08cv217-SPM/WCS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

     **Defendant.**

_____/


**REPORT AND RECOMMENDATION**

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D).  It is recommended that the decision of the Commissioner be reversed and the Commissioner be ordered to grant an award of benefits.

**Procedural status of the case**

Plaintiff, Judy Alday, applied for disability insurance benefits and supplemental security income benefits.  Plaintiff was 49 years old at the time of the administrative hearing, has an 8th grade education, and has past relevant work as a restaurant worker

and a cleaner.  R. 379.  Plaintiff alleges disability due to mild mental retardation, diabetes mellitus, and degenerative disc disease of the lumbar spine.  The Administrative Law Judge found that Plaintiff's intellectual functioning level did not met or equal a listed impairment, that Plaintiff has the residual functional capacity to perform light work, and that Plaintiff is not disabled as defined by Social Security law.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed

all evidence and has sufficiently explained the weight he has given to obviously

probative exhibits, to say that his decision is supported by substantial evidence

approaches an abdication of the court's 'duty to scrutinize the record as a whole to

determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662

F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must

be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122

S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or
     equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.   Does the individual have any impairments which prevent past
     relevant work?

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Legal Analysis**

Plaintiff contends that the ALJ erred in determinating that she had borderline intellectual functioning (instead of mild mental retardation) and in failing to find that her condition met Listing 12.05C.  The first argument is just another way of making the second argument, so only the second argument will be addressed.

The Commissioner's rules provide that if the claimant has an impairment that is listed in or equal to an impairment listed in Appendix 1, Subpart P, following 20 C.F.R. § 1599, then a finding of disability will be made at Step 3 without considering the claimant's age, education, and work experience.  20 C.F.R. § 1520(d).  "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' "  Sullivan v. Zebley, 493 U.S. 521,

532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990) (emphasis by the Court).  A claimant

is entitled to benefits if it is shown that his or her limitations meet, or are medically or

functionally equal to, the limitations set forth in the Listing.  Shinn ex rel. Shin v.

Commissioner, 319 F.3d 1276, 1282 (11th Cir. 2004).

> Listing 12.05C provides:
>
> 12.05 *Mental retardation*:  Mental retardation refers to significantly
> subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; i.e., the
> evidence demonstrates or supports onset of the impairment before age
> 22.
>
> The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied.
>
> \*                     \*                     \*
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a
> physical or other mental impairment imposing an additional and significant
> work-related limitation of function;

On July 17, 2006, Plaintiff was examined by David C. Ghostley, Psy.D.  R. 156.

She had been referred to Dr. Ghostley by her attorney.  *Id.*  Dr. Ghostley administered

the Wechsler Adult Intelligence Scale – 3rd Edition (WAIS-III).  *Id.*  Plaintiff had a Verbal

score of 66, a Performance score of 73, and a Full Scale I.Q. of 66, indicating Mild

Mental Retardation according to Dr. Ghostley.  *Id.*  Dr. Ghostley found there to be "little

meaningful scatter among subtest scores."  *Id.*  He found that at a .05 level of statistical

significance, "there is only relative strength noted in her ability to hold and manipulate

strings of digits in her working memory (Digit Span)."  *Id.*  Dr. Ghostley said that relying

upon the consistency of the subtest results, "as well as the adequate effort Ms. Alday

put forth during testing, these results are considered a valid representation of her level

of intellectual functioning and are consistent with her reported academic and

occupational histories."  *Id.*

In <u>Lowery v. Sullivan</u>, 979 F.2d 835 (11th Cir. 1992), the court held:

> Generally, a claimant meets the criteria for presumptive disability under
> section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70
> inclusive, and evidence of an additional mental or physical impairment that
> has more than "minimal effect" on the claimant's ability to perform basic
> work activities.

979 F.2d at 837.  "This court, however, has recognized that a valid I.Q. score need not

be conclusive of mental retardation where the I.Q. score is inconsistent with other

evidence in the record of the claimant's daily activities and behavior."  *Id.*, *citing* <u>Popp v.

Heckler</u> 779 F.2d 1497, 1499 (11th Cir. 1986).  It is also appropriate to consider medical

reports, daily activities, behavior, and other evidence in the record.  <u>Popp</u>, 779 F.2d at

1499.

> Although the ALJ is allowed some leeway to evaluate other evidence
> when determining the validity of an I.Q. score, *an ALJ may not consider a
> claimant's age, education, and work experience after the ALJ accepts the
> I.Q. score as valid and finds that the claimant meets or equals the criteria
> of a listed impairment.  See Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th
> Cir.1984) ("consideration of the fact that [claimant] could return to her past
> work is not a relevant inquiry once she has met the Listing of Impairments
> in Appendix 1"); 20 C.F.R. § 404.1520(d).

<u>Lowery</u>, 979 F.2d at 837 (emphasis added).  This is simply the normal rule that if the

ALJ determines that a claimant has proved disability at Step 3, the ALJ does not

consider Steps 4 and 5.

In <u>Lowery</u>, the Commissioner conceded that the I.Q. score was valid and that the

claimant had additional work-related limitations. 979 F.2d at 838.  Hence, the only issue

was whether there was evidence that the mental retardation manifested itself before

age 22.  *Id.*  In <u>Hodges v. Barnhart</u>, 276 F.3d 1265 (11th Cir. 2001), the court held that "absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout her life."  276 F.3d at 1268.  The court concluded:

> We agree with other circuits in concluding that there is a presumption that mental retardation is a condition that remains constant throughout life.  Therefore, we find that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two.

*Id.*, at 1266.  The court remanded with instructions that the ALJ presume mental impairment before the age of 22 and then examine Plaintiff's activities of daily living to see if those activities rebutted the presumption of mental impairment.  *Id.*

The Administrative Law Judge here determined that instead of mild mental retardation, Plaintiff had only "borderline intellectual functioning."[1]  R. 22.  The ALJ reasoned:

> *Although the record includes a verbal and full-scale IQ score of 66, obtained during testing in July 2006, the record does not include any school records to support the claimant's level of functioning prior to age 22.  Furthermore, the claimant was successfully employed for a number of years prior to her alleged onset of disability date.*

R. 22 (emphasis added).  The ALJ did not expressly determine whether the I.Q. scores were valid.[2]

---

[1] It is this finding that Plaintiff argues was an improper substitution of the ALJ's judgment for the judgment of Dr. Ghostley.  Since the ALJ may discount an I.Q. score if belied by a claimant's work history, the result – discounting the I.Q. result – is much the same.

[2] This may be error.  "It is therefore critical that an ALJ specifically address and resolve the validity of an I.Q. score; if the I.Q. score is valid and meets or equals the

If the ALJ found that the I.Q. scores were invalid for lack of school records to support Plaintiff's I.Q. prior to age 22, this was error and contrary to <u>Hodges v. Barnhart</u>. The second sentence quoted above, however, is legally consistent with <u>Popp</u>, <u>Lowery</u>, and <u>Hodges</u>.  Later in the opinion, the ALJ noted that Plaintiff's past relevant work was "as a kitchen helper, cleaner, housekeeper, cook, fast food, and sewing machine operator, semiautomatic."  R. 25.  She found from the testimony of the vocational expert that these were "light to medium jobs that range in skill level."  *Id.*  It was this work history that the ALJ found to be evidence that the I.Q. scores did not meet or equal Listing 12.05C.

Defendant argues that these findings correctly applied the law and are supported by substantial evidence in the record.  Defendant asserts that the I.Q. scores were the result of "a one-time examination on referral from Plaintiff's attorney with no discussion of Plaintiff's actual life functioning."  Doc. 14, p. 5.  Defendant points out that Plaintiff did not testify to limitations due to lack of intelligence, and her medical records did not mention this limitation.  *Id.*  Rather, it was noted several times in her medical records that she was oriented and alert, citing R. 184, 186, 196, 198, and 206, and once that her mental status was normal.  *Id.*, citing R. 203.  Defendant also points out that the physician who conducted a physical examination for purposes of determining physical disability found that she was polite, cooperative, and her speech "was audible, understandable and sustainable."  *Id.*, citing R. 134.

---

criteria of a listed impairment, the ALJ can go no further."  <u>Thomas v. Barnhart</u>, 2004 WL 3366150, *2 (11th Cir. Dec 07, 2004) (No. 04-12214).

The health records do contain routine notations that Plaintiff was properly oriented in three spheres and alert when she came in for health care, R. 184, 186, 196, 198, and 206, and "normal" was entered once on check list for mental status, R. 203. Also, the consultant did find her speech to be "audible, understandable and sustainable." R. 134.  The notations show that there were no obvious signs of disorientation or delusional thinking when Plaintiff presented for physical health care, and that her speech was understandable when she was given a consultative physical examination.  But such observations are not significantly related to Plaintiff's intellectual functioning.  Moreover, it is unlikely that those health care providers would have carefully assessed the level of her intellectual functioning in the course of treating her physical ailments.

Defendant further relies upon evidence of Plaintiff's daily activities.  Defendant points to evidence that Plaintiff lives with a boyfriend, sweeps, walks her grandchildren to school, does laundry, takes care of a dog, and watches television.  Doc. 14, p. 6, citing R. 278, 295-296.

The daily activities cited by Defendant do not constitute substantial evidence in the record to disregard the finding by Dr. Ghostley that Plaintiff is mildly mentally retarded.  That Defendant lives with a boyfriend, R. 278, is not substantial evidence to discount the I.Q. scores.  Plaintiff was asked whether she tried to do some things around the house, and she said yes, "like sweeping, you know, sweeping up and doing a little bit of laundry." R. 295.  She said she took care of her dog.  *Id.*  She said: "I sit and watch a little bit of TV until I get to where I can't hardly sit no more.  Then I try to get up and do whatever I can." *Id.*  She said that she has no hobbies or other activities.  *Id.*

She tries to get outside and walk, and she walks her grandchildren to school.  R. 295-296.  These are minimal activities, and do not suggest a functional level inconsistent with Dr. Ghostley's determination that Plaintiff is mildly mentally retarded.  *See,* Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work."); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (the court must consider the entire record when determining whether the evidence of a claimant's daily activities is substantial evidence for the conclusion that she retains the residual functional capacity to work); Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by Lewis's treating physicians."); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (when considering daily activities, the entire record must be considered, including the claimant's testimony that she had to lie down after two hours of such work); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (a conclusory citation to a claimant's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing).

Defendant also alleges that Plaintiff completed ninth grade, and performed semi-skilled and skilled jobs for many years.  *Id.*  Cited for this is R. 84-86, 93-94, 98-100,

132, and 279-282.[3]  *Id.*  It was noted that Plaintiff left her previous jobs for reasons "other than her alleged disabling conditions," citing R. 93, and 284-286.  *Id.*  Finally, it is argued that the record contains no records to support a finding of Plaintiff's level of functioning prior to age 22.  *Id.*

When asked if she went to school through the ninth grade, Plaintiff said: "Between the eighth and ninth grade, yes, ma'am."  R. 279.  She did not recall whether she even finished eighth grade.  *Id.*  The finding that she completed ninth grade appears to be unsupported.

That Plaintiff was able to perform many semiskilled and skilled jobs for many years, however, could be important evidence to discount the I.Q. scores.  The ALJ relied upon the evidence at R. 84-86 and 93-94.  Plaintiff reported that she was a dishwasher and a cook in a restaurant in 1983, worked as a cleaner in a resort or hotel in 1992-1994, was a fast food cook in 2000-2001, and again worked as a cleaner in a hotel in 2003.  R. 84.  In another part of the record, Plaintiff reported that she was a cook and dishwasher from 1987-1988, worked in a sewing factory from 1994 to 1995, and cleaned motels and condominiums in 1991 and from 1994 to 1998.  R. 93-94.  This, therefore, presents a work history covering the years 1983, 1987-1988, 1991-1998, 2000-2001, and 2003, a significant period of time.

Plaintiff's regular earnings record, however, shows very little regular income earned in the 15 years from 1978 through 1992, with the highest regular income of $3,610.42 in 1988, no earnings in six years (1979, 1980, 1982, 1986, 1989, and 1990),

---

[3] Defendant refers to the ALJ's findings in these passages.  Since the ALJ's findings are not evidence in the record, those citations have been omitted here.

and only $420.00 earned in 1992.  R. 78-79.  Plaintiff earned a bit more in the six years

from 1993 through 1998, with the highest regular income of $9,323.93 in 1996, and the

lowest of $2,248.83 in 1995.  R. 79.  Plaintiff had earnings of $8,097.48 in 1998, had no

regular income in 1999, earned only $164.46 in 2000, and earned $1,618.72 in 2003.

*Id.*  Plaintiff earned a total of $65,062.62 for the period from 1978 through 2007, an

average of $2,243 per year for the 29 year period.

As noted in Lowery, in Popp the court sustained the ALJ's rejection of a claim of

equivalency to Listing 12.05C because the claimant's I.Q. score of 69 was "inconsistent

with evidence that [the claimant] had a two-year college associate's degree, was

enrolled in a third year of college as a history major, and had worked in various

technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher."

979 F.2d at 837, citing Popp, 779 F.2d at 1488.  Additionally, there was evidence in

Popp that the claimant had "tended to place himself in a very unfavorable light," thereby

rendering the personality test scores (the MMPI, not the I.Q. test) invalid in the opinion

of the examiner.  Popp, 779 F.2d at 1498-1499, 1500.

Popp is perhaps the strongest case for finding that an I.Q. score below 70 does

not necessarily meet Listing 12.05C.  There are several others with facts somewhat like

Popp.

For example, in Bischoff v. Astrue, 2008 WL 4541118 (S.D. Fla. Oct 9, 2008)

(No. 07-60969-CIV), affirming the determination that Listing 12.05C was not met, while

the claimant's I.Q. scores there were lower than 70, the claimant had previously worked

as a parts manager and an automobile mechanic, jobs which required technical

knowledge and skills, and he supervised other people successfully for five years.  *Id.*, at

*20.  There was also evidence that the claimant was "faking" his I.Q. score, and gave

conflicting reports the he had finished only the sixth, or seventh, or eighth, or ninth, or

tenth grades, or had a G.E.D., or had vocational training.  Id.  The same result occurred

in Davis v. Astrue, 2008 WL 2939523 (M.D. Ala. Jul 25, 2008) (No. CIV.A.

2:07CV880-TFM), where although the claimant had an I.Q. score under 70, she had

completed twelfth grade, received training in cosmetology and secretarial skills, had a

driver's license, was able to read, write, and perform simple math, and a consulting

psychologist had determined that she was in the borderline level of intellectual

functioning, rather than being mildly retarded.  Id., at *3.

A case with different evidence reaching the opposite conclusion is Durham v.

Apfel, 34 F.Supp.2d 1373 (N.D. Ga. 1998).[4]  There, the court held:

> Mr. Durham's work history does not support the ALJ's implication that he
> successfully worked for 40 years.  He had no earnings whatsoever in nine
> years between 1953 and 1991, and minimal earnings several other years
> (TR 101-102).  Mr. Durham has worked primarily as a heavy laborer (TR
> 46).  There is no evidence that these jobs are beyond the reach of a mildly
> retarded individual.

34 F.Supp.2d at 1380.  Distinguishing Popp, the court said:

> Unlike Mr. Popp, Mr. Durham's work experience does not include technical
> jobs, but jobs as a laborer.  He did not teach high school algebra, he
> worked as a tire repairer, laborer, kitchen helper and material handler (TR
> 46).  Mr. Durham did not go to college, he went to the fourth grade.

Id.  See also, Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003) ("ability to pay his

own bills, add and subtract, use an ATM machine and to take care of all his own

---

[4] This is a report and recommendation to a district judge by a magistrate judge.  The
report and recommendation was adopted by the court.  Case No. 1:97cv2061IRWS,
doc. 12 entered on December 22, 1998, available on PACER.  No appeal was taken.

personal needs," and "ability to identify and administer his medication; his previous jobs;

his obtaining a GED" were not inconsistent with a finding of mental retardation and the

I.Q. scores) (citing Brown v. Sec'y of HHS, 948 F.2d 268, 270 (6th Cir. 1991), "rejecting

the Commissioner's argument that a claimant's full scale IQ of 68 was inconsistent with,

among other things, his driver's license and work history as a truck driver, limited

literacy and sixth grade education, and ability to make change, do laundry, and clean

his room.").

     The case at bar is much more like the evidence in Durham, Markle, and Brown.

There is no evidence here that Plaintiff was malingering or failing to make an effort on

the I.Q. test, and the psychologist found the test scores to be valid.  There are no

equivocal diagnoses here.  The psychologist did not find Plaintiff to be in the higher

range of borderline intellectual functioning.  Plaintiff's work history has been

discontinuous, has not involved skilled work (parts manager, auto mechanic,

cosmetology) or supervision of others.  The jobs Plaintiff has done from time to time are

more like the jobs that the claimants in Durham and Brown had done.   Plaintiff's work

history is not substantial evidence in the record to determine that her I.Q. score was

invalid or that, by her work history, she has exceeded the prognosis of those scores

through adaptive behavior.  Therefore, the evidence of Plaintiff's work history is not

substantial evidence in the record to discount her I.Q. scores.  The ALJ should have

found that Plaintiff's I.Q. scores were valid and met one criterion of Listing 12.05C.

     Listing 12.05C also requires evidence of "a physical or other mental impairment

imposing an additional and significant work-related limitation of function."  This means

that the "work-related limitation of function" must be "significant," but it need not be a

"severe impairment" as defined at Step 2:

> An impairment imposes significant limitations when its effect on a
> claimant's ability to perform "basic work activities" is more than slight or
> minimal.  The question under Listing 12.05(C), however, is not whether
> the impairment is in and of itself disabling, *see Wright v. Schweiker*, 556
> F.Supp. 468, 476 (M.D. Tenn.1983); thus, "significant" requires something
> less than "severe" within the meaning of § 404.1520(c).[5]  That
> "significant" involves something more than "minima"" but less than
> "severe" follows from the regulations.  Once a claimant is found to have a
> "severe impairment" within the meaning of § 404.1520(c), he is deemed
> disabled (he must also meet the durational requirement), and the analysis
> comes to an end.  It is only when the impairment is not severe that the
> inquiry proceeds to determine whether the claimant is disabled under
> Appendix 1.  A claimant is disabled under § 12.05(C) of the Appendix
> when the combination of the impairments renders the claimant severely
> impaired; that is, disabled.  Thus, the impairment referred to in § 12.05(C)
> is something less than "severe" as defined in § 404.1520(c).

Edwards by Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985).

At Step 2, the ALJ found that Plaintiff has severe impairments, diabetes mellitus

and degenerative disc disease.  R. 22.  Accordingly, the ALJ found that Plaintiff has "a

physical or other mental impairment imposing an additional and significant work-related

limitation of function," and that criterion of Listing 12.05C was met.

In summary, the Commissioner's determination that Plaintiff did not meet Listing

12.05C is not supported by substantial evidence in the record.

There remains the question of whether the court should reverse and order that

benefits be awarded or remand for further proceedings.  "Reversal is warranted where

the record is fully developed and, upon the application of correct legal standards, the

---

[5] Section 404.1520(c) sets forth the criteria for consideration at Step 2.

claimant is entitled to benefits."  <u>Durham</u>, 34 F.Supp.2d at 1381, citing <u>Carnes v.</u>

<u>Sullivan</u>, 936 F.2d 1215, 1219 (11th Cir. 1991).  This is the proper remedy here.

**Conclusion**

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to

deny Plaintiff's application for Social Security benefits be **REVERSED** and an order

entered directing the Commission to grant Plaintiff's application for benefits.

**IN CHAMBERS** at Tallahassee, Florida, on January 9, 2009.


<u>s/    William C. Sherrill, Jr.        </u>
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**